and one case on submission. We are going to begin with Sitco Petroleum Corp v. Ascot Underwriting, that's 24-227. Mr. Woods, I understand that you've reserved one minute for rebuttal, is that correct? You may begin when you're ready, sir. Thank you, Your Honor. My name is John Woods, attorney for the defendant's appellant, Ascot Underwriting and other underwriters at Lloyd's. Could you give us one second? Judge Chen made a mistake here. I wasn't going to say anything. My fault. I haven't been doing this long. In my defense, I've been sitting in that chair all week. We could start the clock again, I think. All right. May it please the court. The facts of this case are stated succinctly by the court below in the second paragraph of its March 15, 2023 memorandum of opinion and order ruling on the parties voting for summary judgment. There, the court below stated succinctly as follows. The facts are that Sitco, the plaintiff, attempted to sail cargo out of Venezuela, but before it could do so, United States sanctions triggered a dispute over the cargo. Eventually, Sitco was forced to return it to Venezuela. The decision goes on to explain that due to the sanctions, Sitco could not pay Venezuela worthy oil in cash, which caused PDVSA to demand the return of the oil. It still made Venezuela, and sued, the vessel sat at anchor fully laden for over a year. While PDVSA subsequently obtained the Venezuelan court order, two orders in fact, that ruled that it was entitled to the restitution of its oil. Upon service of the second order on the ship, the captain complied with the order and sailed the ship to a local port and offloaded the cargo, where it was returned to PDVSA the seller. So how much of this is about facts, or is there actually terms of an insurance dispute we need to measure? I'm just trying to wonder, can we move to the legal questions? The legal questions here are, well, the question here, the guts of the question here is… Why wasn't this an insurrection? Insurrection? Yeah. How did we get to this point where the court decided that it was an insurrection? Well, the court made a manifest error in finding that the word insurrection, as used in the policy, was ambiguous. This was the court's finding, despite the fact that both parties agreed on a specific definition of the term insurrection. Neither one claimed any ambiguity or offered any alternative explanation or definition. And the definition they agreed on comes directly from this court's decision. My understanding is that the discussion or the dispute is not over what the definition, what the words are, but what it means in this case. And in this situation, we have a, where there's a U.S.-recognized government and Maduro-led forces. And so why doesn't that create an ambiguity as to who is the recognized government? Well, the wording here is important, Your Honor, because the parties agreed on the definition. And the question then is does the definition fit the facts of the case? The finding of ambiguity by the court takes that decision away. It removes that decision. And that's really what the court should have done. It should have looked at what the parties agreed to be the definition and seen do they fit the facts as presented. So here you had, I don't know if rebellion is the right word. You certainly had resistance against a recognized civil authority, an established government, the use of violence. Why wasn't this an insurrection? I looked up insurrection this morning, and it includes all those things. Well, here's why. Insurrection as defined, as accepted by this court, defined by the parties means- I mean, are we totally bound by that definition? I mean, was that – don't words sometimes take on different meanings in different contexts? Well, in marine insurance law, the meanings of these words is crafted over years and decisions after decisions. And there are a number of decisions. And with background principles of law in mind. It's a common law principle. Right. But doesn't that include the principle that what a duly constituted government is, is what is recognized by the U.S. government at the time? I'm sorry, I don't want to repeat the question. Isn't a background principle of what the constituted government is the entity that is recognized by the U.S. government? Isn't that a background principle pursuant to which the parties drafted this contract? Well, the recognition doctrine, whether it's a constituted government or not, what the meaning of constituted government is, is, of course, relevant to this case. But a constituted government- I'm just asking if that's a background principle. Yeah. I mean, I presume that any time we're talking about an insurrection, it might be in a period of contest over who is in power. Right. And so isn't it a background principle that's relevant to what the parties meant when they said insurrection to ask who, at the time, the U.S. government recognized as the constituted government? The real role of this case and the recognition doctrine, who the U.S. recognizes as the government, which in this case was the ineffectual Juan Guaido government, had no power, had no de facto power whatsoever. It was not a constituted government. The Maduro regime ruled Venezuela, had ruled Venezuela since 2013, all phases of Venezuelan law, all phases of Venezuelan society. I wanted to ask about the language and the policy. It's in a section called Institute War Clauses, and there's a list of things that are covered, war, civil war, revolution, rebellion, insurrection, civil strife arising therefrom, or any hostile act by or against a belligerent power. Well, first of all, why isn't this a hostile act by a belligerent power, number one? And number two, when you put it in context, doesn't this give us some help, some guidance in interpreting it? It would seem that the purpose of this clause would cover this very situation. Well, it doesn't for this reason. It's a war clause, war institute clause, and it does list a ranking, as it were, of levels of, if it were, belligerency, which are covered. The lowest rank of which is insurrection. Above that you have rebellion, you have then revolution, you have then civil war. What about any hostile act by or against a belligerent power? Ah, now that's the classic definition of a war, right? Two belligerent powers going after each other. This is nowhere near that. It doesn't say what you just said. It says any hostile act by a belligerent power. Why wasn't this a number of acts by a belligerent power? Well, here's the problem. Who did the belligerent acts? The Maduro regime. The Maduro regime. There were some isolated incidents of hostile acts. There were several hostile acts. Well, there was repression that was going on. We're not disagreeing with that. But that doesn't constitute an insurrection. The bigger question is how can the Maduro government be an insurrection? Are we limited to insurrection, or can we also rely on other parts of 1.1, including any hostile act by or against a belligerent power? Was the claim only made under insurrection? The claim is only made under insurrection. That's the limit of the claim that was made by CICCO. CICCO hasn't relied on the belligerent power language, either in its complaint or in briefing here. No, there's no such reliance. I want to come back to this point. The Maduro regime, where the fiction arises that causes such problems for this insurance claim, is that the Maduro regime was not an insurrection. Well, that's the question. That's the question. Well, the court below found that it could be. Why wasn't it an insurrection in your view? It was not an insurrection because it was not, according to the definition the parties agreed to, it was not a violent uprising by a group or movement acting for the specific purpose of overthrowing the constituted government and seizing its powers. There were no powers to seize. No one else had any powers to seize. Well, Guaido was exercising some powers, some de facto powers. Not within Venezuela, he was. Not within Venezuela, he had no power.  So you're asking us to ignore what the U.S. government has recognized based on a representation about what is happening in the ground? Like, how are judges supposed to be able to verify that question that you just said? He has no power anywhere in the state. Like, how is that actually workable? Well, I would look at it in this light. Who the United States thinks should be or is or is the legitimate president, who the United States wants the president of Venezuela to be, should not inform whether or not an insurance plan can be made under a policy in this or any other case. Because, look, the United States should withdraw its support tomorrow. And what would happen in that case? Would the insurance plan differ? Would it not be recoverable under the policy? If the United States withdrew its support... No, wouldn't the answer to that be, who did the United States recognize at the time of the seizure of the oil? And that doesn't change. Even if it changes going forward, it doesn't change retrospectively. It still doesn't, in our view, it still doesn't solve the problem that the insurrection, the Maduro government cannot be an insurrection either against itself or against the Guaido government. And that is simply because the obvious reason for the loss of the oil here was the court orders. It was not violence of any kind, nor was there any attempt to... So that's the causation argument, not the meaning of insurrection. That's true. We come back to the insurrection question. And that is the bedrock question here. The bedrock question here is, under maritime law, principles of maritime law honed over decades, if not centuries, what is the meaning of insurrection? And you'll see there have been discussions of this that go back to English cases from 100 years ago, or a Morpheus Phineas case, for instance, discusses what is insurrection. So your basic argument, legal argument, is that insurrection, as used in this contract, unambiguously means the de facto exercise of government power and not the jury as recognized by the U.S. government. Correct. And we have to agree that the word insurrection unambiguously means that for you to prevail. That's correct, Your Honor. And that's correct, Your Honor. And it's because you cannot have and meet the definition of insurrection by overthrowing a constitution and seizing its powers against an entity or a political faction that has no power to seize it. So on that, so we have to agree. Let's assume for a minute I agree with you that it's the— unambiguously means the de facto exercise of power. You said earlier the Guaido regime exercised no powers, but didn't they appoint members of PDVSA? Well, they had— Weren't there embassies? —outside the U.S., outside Venezuela, rather. He had some ability to appoint people, but the point is even the judge below says not once but three times in the summary judgment decision, Guaido had no de facto power. Footnote 6, it's the last time but the three times he says that, had no de facto power. The United States would have liked him to have had power. The United States, one, was trying to put pressure on him. And remember one other thing. The concept of insurrection, and here's the important point with the American law, the concept of insurrection is that there is violence directed at trying to overthrow a government with power Yeah, I think that's funny. I think that's an interesting—you altered it. It's constituted government, right? Like the Pan Am definition is constituted government, not a government with power. And I don't want to suggest you're being a bit slippery here, so why don't you tell me why constituted government doesn't put us back into this position of it being ambiguous what it means in this particular setting where we have the precise scenario that you're talking about. Well, it is true, Your Honor, that the word constituted government is not constitutional. It's not a legal term. It's a bit amorphous. But all cases make clear that the constituted government is the government de facto and de jure, or at least de facto, and that's, for instance, the auction case, which the United States recognized a Mexican general who had seized two-thirds of the territory of Mexico. Even though it didn't have a legal basis, it was the constituted government that was de facto ruling that area. In this case, the Guaido government had no ability to rule anything. Okay, so can I ask, if we disagree with you and find that it was ambiguous, is there a way that you prevail? If you find, I'm sorry? If we find that the word insurrection was ambiguous, like right now we disagree, would you like to explain why you would still prevail in this instance? Well, I would say this, and then I can talk about it. The court will criticize both parties for not introducing extrinsic evidence. If there is a finding of ambiguity, then this case should be remanded for testimony or for evidence of extrinsic evidence on the point of what the parties wanted and what the intention of the parties was. Let me ask two questions about that. I think that the record below is that neither side proffered what would be available parole evidence as to that meaning, and so we've got law that says in that context there's no point. But let me ask, how does that intersect with the interpretive principle in insurance contracts that ambiguities are to be found in favor of the insured? Well, that contra preferential argument, Your Honor, is a rule of instruction that is widely discouraged and disfavored. The courts have uniformly sought other means to determine what the meaning of an ambiguous term is, and extrinsic evidence, particularly of the intent of the parties, is particularly germane in that regard. In this case, again, neither Sitko nor the underwriters ever said that the term was ambiguous. Sitko and the underwriters agreed specifically on the definition, and so no extrinsic evidence, no evidence at all was put in as to what the meaning of the policy was in respect of either Sitko or underwriters. What evidence would you put in as to the drafter's intent if you were remanded to do that? Well, I think the proper court lines would say that the definition is, as the parties agreed, as they agreed at the beginning and the outset of this case, So there would be no purpose in that, right? We'd just be back with the same question. Well, I think that they would expound on that, of course. But that's not extrinsic evidence. Hold on a second. That's not extrinsic evidence. That's the parties' positions in this litigation. Is there any evidence as to what they intended when they entered into the policy? Well, that has not been explored yet, Your Honor. The court below called during the nine months that the motion for summary judgment sat undecided. The court below called for briefs on the question of the historic meaning of insurrection. Did the parties argue that they should do some discovery on extrinsic evidence? That would be, I think, in this case. Did they do that? Did they do that below? No, they never asked that. Well, okay. They never asked that. They asked instead for the meaning of the term in English and historic context. The parties put in affidavits from barristers in London explaining the background, which the court frankly ignored. The court asked for additional briefing later on the legal question of whether or not Juan Guaido ever became president or not. This was on the eve of trial. The parties put in 15 submissions of affidavits by Venezuelan counsel and declarations. That, too, was ignored. The court could have asked for extrinsic evidence of what it means. And what it means, it announced its arbitrary decision, its decision on arbitrariness in its motion, in its memorandum order with respect to motion of summary judgment. So we'll hear from you on rebuttal. Thank you so much. We'll hear from you on rebuttal. Thank you so much. I apologize. Mask. Good morning, Your Honors. David Klein from the Athletics and Petroleum Corporation. There are a few things that I feel the need to correct up front. First of all, we keep on talking about maritime law or admiralty law. This policy specifies that it's governed by New York law. This is a diversity case, not a case in the courts of admiralty jurisdiction, and it was defined New York law. So that's quite important here because talking about admiralty principles in the abstract doesn't inform the discussion. Secondly, I want to clear up what we're talking about when we're talking about insurrection. The Pan Am case doesn't just say constituted government. On page 1001 of the opinion, it says, for there to be an insurrection, there must be an intent to overthrow a lawfully constituted government. So a government that's unlawful or a regime that's unlawful is not qualified as the government. The government is the one that's lawful. And the United States has recognized the Guaido government in the National Assembly as the lawful government of Venezuela. I'd respond to the argument. Maduro was in power, so he didn't need to overthrow anyone. Well, again, if you look at Pan Am, it talks about the purpose of seizing the powers of a lawful government. Whose powers were the powers of the lawful government? They were Guaido's. It does use the words uprising and overthrowing. Was that what we had here, an uprising or overthrowing? I would say it wasn't overthrowing, yes. At the moment that Guaido became president of Venezuela on January 10, 2019, he had the authority. If Maduro had peacefully left the presidential palace, there would be no reason to doubt that all the institutes of power, all the functionaries of government, would have followed his lawful orders. In fact, some of them did. That's another thing that's glossed over. One of the events described in the record below is military personnel who followed Guaido's orders and obtained the release of a political figure who was under arrest by the Maduro regime. How about uprising? Was this an uprising? Well, I'm not sure what the definition of the term uprising is. I mean you could certainly say that Maduro and those who followed him rose up and struck down the Guaido government. Whether you want to call it an insurrection or advance it further and call it a revolution, which is covered under the policy. Are we bound by the Pan Am definition? We are. Pan Am is this court's articulation of what the test is. And what the district court found looking at the situation, he determined first that a reasonable person could adopt either party's construction of the term insurrection, the application of the term insurrection to the facts of this case. By the way, your colleague on the other side said several times that the parties agreed on the definition of insurrection. Is that true? We agree that the words Pan Am are the definition of insurrection in the law of this court. And we believe that a proper application of those words, a proper construction of those words on the facts of this case would yield a conclusion that there was at least an insurrection. What was different here is that Pan Am did not involve a situation where you had, on the one hand, a regime whose term had expired that refused to leave office, and on the other, a lawfully constituted government taking power pursuant to the constitutional norms of the country. And that created an ambiguity. Is this an uprising? Is this an overthrow? The judge felt, and we agree, that it's possible for reasonable minds to come to opposite conclusions on that point. So can I ask, does anything in this case turn on whether the district court properly took judicial notice of the State Department and other reports? Physically. I think that some of the facts in the State Department reports are helpful to us, obviously. But frankly, there were enough admissions in the parties' Rule 56.1 statements that there's no doubt. So in addition to the judicial notice, you would say that opposing counsel effectively agreed to all the relevant facts? Essentially, yes. Essentially, yes. So I want to start with that, but I also want to point out. This is a little bit formalistic, but I read the district court as having taken judicial notice of Guaido being president, being the duly constituted government. Do you understand that to be a question of law or a question of fact? I think he took judicial notice of the onset of Guaido's government pursuant to Article 233 of the Constitution as a fact report. So that's a Venezuelan law analysis under 44.1? That's correct. Not judicial notice of a fact. Well, as a fact of something that had happened in the world, as described in the State Department country report. But then subsequently, he also rendered a ruling on that point as a matter of law. He requested briefing on the point. I believe he had 15 briefs and affidavits before him, and he ruled as a matter of law on the record. Well, that was in part because of our precedent that said courts are bound to follow the executive decisions on recognizing a foreign government, right? That's as if the Hotskies case— I'm sorry, Your Honor, I'm also having difficulty— Oh, I'm going to do it. But in part, that based on our own precedent, that indicates that courts are bound to follow the executive's decision on recognizing foreign government, right? That's as if Tosky case. Absolutely. But part of the ruling was also on what date was the onset of the government. And that was actually an important issue simply for determining what evidence would be relevant and presented at trial. And we concluded that pursuant to Article 233 of the Venezuelan Constitution, Mr. Guaido became president on January 10, 2019. Can I ask a question about under New York law, how are we to understand what constitutes ambiguity? If we have a scenario in which there's a 70% likelihood that X means Y and then there's a 30% likelihood that X means Z, is that ambiguous? Does it need to be 50%? Is it as long as there are two and it doesn't matter if there's one that's a lot more likely or not less likely? You're in my wheelhouse, Your Honor. So law of ambiguity is quite clear. It doesn't reduce to a numerical standard, but in fact it accounts for it in a way. The test is simply whether both parties have presented an interpretation or construction that could be accepted by a reasonable person. And there's also a case law that makes clear one interpretation doesn't need to be more reasonable than the other. In other words, the insurers don't win because a particular judge thinks their interpretation is more reasonable. They only win if he thinks they have offered the only reasonable interpretation. And that's certainly not the case here. Can you talk to me about your position on the jury instruction regarding causation? Do you believe that it's been forfeited? Absolutely, Your Honor. So first of all, as you know, we believe that the argument has been waived, but I'm happy to put it to substance. The policy uses the expression arising from, and that's a term that New York courts have unequivocally held to require only some causal relation, not probable cause. And Pan Am didn't involve the words arising from. It involved words that this court construed as requiring probable cause due to or resulting from. But even there, the court noted that if the parties wished to apply a more lenient standard of causation, they had only to choose different words in their policy. And that's exactly what the parties did here. They chose arising from. They chose New York law to apply it. And New York court of appeals cases, like Moroni and like Regal Construction, don't limit that application to specific lines of insurance coverage. They simply state what arising from means. Now, the only argument that the other side has really offered is a citation to a New York court of appeals decision predating Moroni by over 100 years, Bird v. St. Paul Insurance Company. And that was a case that applied the approximate cause test in a case involving a boat. It wasn't even quite sure that it's marine insurance, looking at the opinion. But even assuming it was, Moroni also did not involve arising from language. It simply applied – it didn't state what language applied, but it simply applied the approximate cause test as a default. And it can't be made to stand for a principle that in marine insurance, there's always a requirement of approximate cause, even if the words of the policy specify otherwise. And moreover, there's no way – there's no basis to distinguish Moroni or Regal Construction based on the fact that they're non-marine insurance cases. Bird itself cited a host of non-marine insurance cases in analyzing the insurance law principles before it. So clearly the Bird court didn't think they were distinguishable, but they were part of a fabric of insurance law that was applying. And since Moroni, that fabric has clearly defined arising from in only one way. Before you sit down, I was taken by the language, any hostile act by or against a belligerent power. Is there some reason you didn't rely on that language? Because it seems to me that's a little bit broader than insurrection. The case law suggests that insurrection is the least demanding test. And frankly, we probably satisfy the more demanding ones. There is no definition of hostile power. We could get into an argument about what that means, whether it has to be a state recognized by the United States or not, for example. But what we do have is an attempt to take power away from the constituted, the legally constituted government of Venezuela as recognized by the United States. Thank you. Thank you so much. Thank you. Mr. Wood, we let you go for a really long time, so I'm going to keep you at your minute. Okay. I need to correct something that was corrected at the beginning. Although the jurisdiction was founded on diversity, this is still a maritime law case. The fact that it was brought into this court of diversity doesn't mean that the marine insurance contract that is here is not subject to being interpreted. Doesn't it require application of New York law, the contract? No, and here's why. Raiders Retreat, Great Lakes Insurance versus Raiders Retreat, which we cite, was announced in a 9-0 decision by the Supreme Court last year. And it holds specifically that in maritime law cases, if there is a maritime rule, that rule preempts state law. Here's what the court said, and I'll say it very quickly. It said that the courts – it refers to the courts, the Supreme Courts, modern maritime jurisprudence, which tends to place greater emphasis on the need for uniformity in maritime law. It goes on to say we propose several cases, 1955 Supreme Court case, several cases on this subject, held only that state law applied as a gap filler in the absence of a uniform federal maritime rule. And so the answer is yes, maritime law is a maritime contract, which it is. Marine insurance is undoubtedly a maritime contract. It is subject to maritime law. Under Raiders Retreat's 9-0 decision last year, if there's a maritime rule, it preempts state law. State law is a gap filler. The court chose New York as the gap filler law, but they did not abrogate the application of maritime law in this case. And proximate clause is a fundamental maritime principle under maritime law. Okay. Thank you so much. We will take this case under reclassified.